## McMULLAN v. UNITED STATES.
### Civ. A. No. 7511.

District Court, E. D. New York.
Dec. 18, 1947.

Harold P. Clune, of New York City, for plaintiff.

J. Vincent Keogh, U. S. Atty., of Brooklyn, N. Y., and Frank J. Parker, Asst. U. S. Atty., of Brooklyn, N. Y., for defendant.

GALSTON, District Judge.

On January 28, 1946, the plaintiff, a young woman twenty-six years of age, while crossing the east bound traffic roadway at Atlantic Avenue and 86th Street, in the Borough of Queens, New York City, was struck by a United States Navy ambulance, driven by one Rubly in the employ of the

defendant. The action is brought pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C.A. § 931.

The east bound roadway is divided into four lanes. The plaintiff left the curb at the south-east corner of 86th Street and Atlantic Avenue to cross the roadway to the north side of Atlantic Avenue. She had reached the fourth lane of the east bound roadway when she was struck by the ambulance. Though there is some conflict of testimony, the credible evidence leads me to believe that prior to stepping from the curb, the plaintiff looked to her left, which would be the direction of approaching traffic, and she observed a car with headlights on (the time was somewhere between six and seven o'clock P.M.) about 250 feet away. She kept on walking, and after having crossed the first lane she noted that the approaching car was then at about 84th Street, which she estimated to be about 170 feet away. She saw no other vehicle in the immediate vicinity, and none between her and this approaching car. She continued walking across the roadway, got to the third lane, looked again to the left, found the car closer, between 85th and 86th Streets, and then endeavored to get to the safety island. While she was in the third lane the car was close to 86th Street, and as she said, "not quite crossing the intersection there." She believed that the vehicle was also in the third lane, and while proceeding on her way she kept watching to see what the driver would do. Reaching the fourth lane she was struck by the car. She said: "Then out of the clear blue he just swerved his car left—and I don't know what happened to me".

Rubly, the driver of the ambulance, and Stone, the corpsman who sat alongside him, testified that they had been driving in the fourth lane continuously for a mile or a mile and a half, prior to the accident. Rubly was plainly negligent in failing to observe the plaintiff on the roadway. There was no intervening car, and his vision extended a full block and over the entire width of the roadway. Consequently, at 86th Street he should have seen the plaintiff proceeding across the roadway. He sounded no horn or siren, and did not know that he had struck the plaintiff until after the accident. Stone said: "Hey, watch out!"—whereupon Rubly jammed on the brakes, swung his car to the left and came to rest, as he testified, on the safety island. Stone, who saw the plaintiff a second or two before "we actually hit her", said that at that time the plaintiff was half way across the third lane or in the vicinity of the third lane from the second lane. Contradicting Rubly, Stone testified that Rubly had, on swerving left, driven over the safety island. If Stone is correct about that, the ambulance must have been driven at a high rate of speed. Even Feis, the so-called disinterested witness, admitted that the ambulance was being driven faster than 35 or 40 miles per hour. Feis was a passenger in a taxi-cab which was some distance behind the ambulance. He sat in the rear seat. I don't believe he had a clear view of the accident. He was not able to say at the trial whether the person he observed crossing the roadway was man or woman. I attach little weight to his testimony except as to that which bears on the speed of the ambulance. To illustrate the lack of weight which should be given his testimony, I call attention to the following recital: he said the plaintiff was but 5 feet from the curb when the ambulance was 90 feet away. Each lane was about 10 feet wide. Accordingly Feis would have the plaintiff walking a distance of 30 feet while the ambulance, traveling at a speed exceeding 35 miles an hour, covered but 90 feet to the point of impact. Moreover, Feis said that the cab was 90 feet behind the ambulance at the time he saw the plaintiff close to the ambulance, and that it had been the same distance behind the ambulance throughout, for they had been traveling at approximately the same speed. If 90 feet measured the distance between the two vehicles, then the cab driver violated Sec. 81 of the traffic regulations. That section prohibits the driver of any vehicle other than one on official public business to follow an emergency vehicle traveling in response to an emergency call closer than 200 feet.

Bearing generally on the question of the driver's negligence, I find, on reading the traffic regulations of the Police Department of the City of New York, that Sec. 80,

which relates to the "duties of drivers on approach of emergency vehicles" contains this provision: "This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street."

Sec. 72, subdivision (g), of Article 5, governing the right of way, provides that a driver may drive on either side of a one way street, but shall keep to the right as far as practicable. It will be recalled that Rubly and Stone testified that the ambulance was proceeding along the fourth lane, which would be the farthest to the left.

Plaintiff is entitled to a judgment. To determine the amount is, of course, not easy. She is entitled to be compensated for her pain and suffering due to the nature of the injuries, and to be reimbursed for her expenses. She suffered most serious bodily injuries and certainly great pain. She was kept in the hospital from January 28, 1946 to July 12, 1946. On leaving the hospital she had to wear a walking caliper extending down to the foot from the left hip. She was kept at her sister's house in Brooklyn for some months thereafter and was unable to assume work until December, 1946, and then could not go back to her old job for which she was getting $33 a week, for she could not stand on her feet for most of the eight hours spent in her former employment. She undertook clerical work and has been doing that since. She started in her new job at $25 a week and has been raised to $31 a week. Her physician said that she had sustained a fracture of the pelvis, with a protrusion of the head of the femur into the pelvis; also a fracture of the left ankle, a concussion and a hematoma on the left thigh. The doctor testified that she had sustained a one-inch shortening of the left lower extremity, and limitations of abduction both external and internal. So far as the injury to the left hip is concerned, the prognosis was that it would be permanent. Her hospital bill was in the amount of $1251.25. During her disability, she lost in wages approximately $1518. Considering the pain, suffering and permanent nature of the condition described by the doctor, $10,000 would not seem to me

to be excessive, so judgment may be entered for the plaintiff in the sum of $12,769.25.

The Federal Tort Claims Act, Title 28 U.S.C.A. § 944, provides that in rendering judgment the court may, as part of the judgment, award a reasonable attorney's fee to be paid out of but not in addition to the amount of the judgment. Accordingly the attorney will be allowed the sum of $1300.

Concurrently herewith findings of fact and conclusions of law will be filed.